UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**BILL OF INFORMATION FOR WIRE FRAUD
AND NOTICE OF FORFEITURE**

U.S. DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA
FILED JUL -3 2025
CLERK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 25-86-SDD-RLB |
| | : | |
| | : | 18 U.S.C. § 1343 |
| versus | : | 18 U.S.C. § 981(a)(1)(C) |
| | : | 21 U.S.C § 853(p) |
| | : | 28 U.S.C. § 2461(c) |
| RINITA LEE MACK | : | |

**THE UNITED STATES ATTORNEY CHARGES:**

At all times relevant to this Bill of Information:

1. Defendant, **RINITA LEE MACK,** was a resident of Baton Rouge, Louisiana within the Middle District of Louisiana.

2. **MACK** was a full-time United States Postal Service employee.

3. Financial Lender 1 was a financial institution based in Bedford, Texas.

4. Bank 1 was a financial institution domiciled in Birmingham, Alabama. **MACK** maintained an account ending in x1760 (Acct. x1760) at Bank 1.

**COVID-19 Disaster-Relief Programs**

5. The Coronavirus Aid, Relief, and Economic Security (CARES) Act was a federal law enacted in or around March of 2020 and designed to provide emergency financial assistance to millions of Americans who were suffering the economic effects of the COVID-19 pandemic. The CARES Act provided relief to small businesses through the Paycheck Protection Program (PPP) and the expansion of the Economic Injury Disaster Loan (EIDL)

Program. Other programs, including the Pandemic Unemployment Assistance Program (PUA), Federal Pandemic Unemployment Compensation (FPUC), and the Lost Wages Assistance Program (LWAP), expanded unemployment insurance (UI) eligibility and increased UI benefits.

*Paycheck Protection Program*

6. The Paycheck Protection Program (PPP) was administered by the Small Business Administration (SBA) and provided forgivable loans to small businesses for job retention and certain other expenses. The PPP permitted participating third-party lenders to approve and disburse SBA-backed PPP loans to cover payroll, fixed debts, utilities, rent/mortgage, accounts payable and other bills incurred by qualifying businesses during, and resulting from, the COVID-19 pandemic. PPP loans were fully guaranteed by the SBA.

7. To obtain a PPP loan, a qualifying business had to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications, including that the business was in operation and either had employees for whom it paid salaries and payroll taxes or paid independent contractors. A business applying for a PPP loan was required to provide documentation showing its payroll expenses, such as filed federal income tax documents.

8. PPP loan applications were electronically submitted or caused to be submitted by the borrower to a third-party SBA-approved lender, like Financial Lender 1. Once approved, the business received the PPP loan proceeds via an electronic funds transfer from the third-party lender to a financial account under the control of the business.

9.  The proceeds of a PPP loan were to be used for certain specified items, such as payroll costs, costs related to the continuation of group health care benefits, or mortgage interest payments. The proceeds of a PPP loan were not permitted to be used by the borrower to purchase consumer goods, automobiles, personal residences, clothing, or jewelry, to pay the borrower's personal federal income taxes, or to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

*Economic Injury Disaster Loan Program*

10. The CARES Act expanded an existing disaster-related program, the Economic Injury Disaster Loan ("EIDL") program, to provide loan assistance for small businesses and other eligible entities. EIDL proceeds could be used to pay fixed debts, payroll, accounts payable, and other necessary financial obligations that could not be met as a direct result of the disaster. Eligible applicants could also request and receive immediate advances of up to $10,000, which did not have to be repaid.

11. EIDL funds were issued directly from the United States Treasury, and applicants could apply through the SBA via an online portal and application. The loan application required the applicant to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain funds. The application required the applicant to provide information about the business (such as the number of its employees and its gross revenues for the 12-month period prior to the date of the disaster) and information as to any criminal history of the business owner, among other information. Applicants were required to certify that the information provided in their applications was true and accurate, and applicants were warned that any false statement or misrepresentation to the SBA may result in sanctions, including criminal penalties.

*Pandemic Unemployment Benefits*

12. Unemployment insurance (UI) was a joint state and federal program that provided monetary benefits to eligible lawful workers. Although state workforce agencies (SWAs) administered their respective UI programs, they did so in accordance with federal laws and regulations. UI payments (benefits) were intended to provide temporary financial assistance to lawful workers who were unemployed through no fault of their own. Each state set its own additional requirements for eligibility, benefit amounts, and length of time benefits were paid. Generally, UI weekly benefit amounts were based on a percentage of the applicant's earnings over a base period. As mentioned above, the CARES Act expanded these benefits in response to the COVID-19 pandemic by establishing the PUA, FPUC and LWAP.

13. The SWA for each state had a different title. In the State of California, the California Economic Development Department (CEDD) based in Sacramento administered the UI program. In the State of Colorado, the Colorado Department of Labor and Employment (CDLE), based in Denver, administered the UI program. In the State of Florida, the Florida Department of Economic Opportunity (FDEO) administered the UI program.

14. Those seeking UI benefits submitted online applications to the SWAs. Applicants had to answer specific questions to establish eligibility to receive UI benefits, including their name, date of birth, telephone number and mailing address, among other things. Applicants also had to self-certify that they met a COVID-19 related reason for being unemployed, partially employed, or unable to work. The SWAs relied upon the information in the applications to determine UI benefits eligibility. Once an application was approved, the SWA typically distributed state and federal UI benefits electronically to a debit card or via

direct deposit. These debit cards were sent via the mail to the address the claimant provided. The claimant could activate their debit card via telephone or online.

**The Scheme to Defraud**

15. Beginning in or around June 2020, and continuing until at least June 2021, in the Middle District of Louisiana and elsewhere, the defendant, **RINITA LEE MACK,** devised and intended to devise, a scheme and artifice to defraud the United States, through the SBA, Financial Lender 1, the State of California, the State of Colorado, and the State of Florida, by filing false and fraudulent applications for pandemic-related funds.

**Purpose of the Scheme**

16. The purpose of the scheme was for the defendant to unjustly enrich herself by obtaining pandemic-related funds by means of materially false and fraudulent pretenses, representations and promises.

**Manner and Means**

17. In furtherance of the scheme, **MACK** filed false and fraudulent PPP, EIDL, and UI applications. In her applications, she made false representations and submitted fraudulent and misleading documents intended to bolster her applications.

18. Specifically, **MACK** filed the following PPP, EIDL, and UI applications, which contained the false representations described below and others:

| Date | Application | Applicant Name | Example of False Statements |
|---|---|---|---|
| July 10, 2020 | EIDL | Rinita Mack/Macknificent Catering | That **MACK**'s catering business was a non-profit organization with $8,400 in gross revenues for the tax year 2019. |

| July 18, 2020 | California UI | Rinita Mack | That **MACK** was self-employed as a beautician before being laid off as a result of the Covid-19 pandemic. |
| October 21, 2020 | Florida UI | Rinita Mack | That **MACK** had not applied for UI benefits from any other state. |
| April 18, 2021 | PPP | Rinita Mack | That **MACK**'s business had a gross income of $70,000 for the tax year 2020. |
| May 31, 2021 | EIDL | Rinita Mack | That **MACK**'s business had a gross income of $170,000; $70,000 cost of goods; and $25,000 in rental obligations for 2019. |
| June 24, 2021 | Colorado UI | Rinita Mack | That **MACK** resided in Colorado and had not applied for UI benefits from any other state. |

19. Regarding her UI applications, **MACK** provided information in support of her UI applications that she knew to be false because, at the time she submitted the claims, **MACK** was employed full time by the USPS. As a result of the false information she provided, the State of California approved and funded her UI claim in the amount of $13,080.

20. In support of her fraudulent PPP application, **MACK** submitted fraudulent and misleading documents, including a fictious 2019 Schedule C 1040 Tax Form, which falsely represented that her business had more than $70,000 in gross receipts and sales for the year and the company had more than $10,000 in expenses. As **MACK** knew at the time, those representations were not true, and she never filed a 2019 Schedule C 1040 Tax Form for any purported business.

21. Based on **MACK's** false representations and the fraudulent supporting material Financial Lender 1 approved and funded her PPP loan in the amount of $14,582.

22. As **MACK** received the proceeds of the above-described pandemic relief applications, she used the funds for personal expenses, including utility bills, fast food, shopping and travel.

23. Through her scheme to defraud, **MACK** successfully gained control of more than $27,000 in fraudulent pandemic relief proceeds to which she was not entitled:

    a. California UI funds, in the amount of $13,080 was paid out to **MACK** via a debit card.

    b. A PPP loan, in the amount of $14,582, was wired to **MACK's** bank account ending in 1760.

24. Through her scheme to defraud, **MACK** attempted to gain control of more than $200,000 in other fraudulent pandemic relief funds, including the following:

    a. An EIDL for approximately $3,200.

    b. An EIDL for approximately $200,000.

**COUNT 1**
**Wire Fraud**
**(18 U.S.C. §1343)**

25. The allegations contained in Paragraphs 1–24 are incorporated by reference herein as factual allegations.

26. On or about the dates set forth below, in the Middle District of Louisiana and elsewhere, for the purpose of executing and attempting to execute the aforementioned scheme and artifice to defraud, **RINITA LEE MACK**, the defendant herein, did cause to be transmitted in interstate commerce the following wire communications, among others:

| COUNT | APPROXIMATE DATE | WIRE TRANSFER DESCRIPTION |
|---|---|---|
| 1 | July 18, 2020 | Electronic submission of fraudulent UI application from the Middle District of Louisiana to CEDD's computer servers located outside of State of Louisiana. |

The above is a violation of Title 18, United States Code, Section 1343.

### NOTICE OF FORFEITURE

27. The allegations contained in Paragraphs 1-26 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), and Title 28, United States Code, Section 2461(c).

28. Upon conviction of Count 1 in this Bill of Information, **RINITA LEE MACK**, defendant herein, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), all property, real or personal that constitutes or is derived from proceeds traceable to the offense, including but not limited to a sum of money equal to the amount of the proceeds of the offense.

29. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant 21 U.S.C. § 853(p) as incorporated by 28 U.S.C. § 2461(c), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

                                                       UNITED STATES OF AMERICA, BY

DATE: 7/3/25

                                                       ELLISON C. TRAVIS
ACTING UNITED STATES ATTORNEY
MIDDLE DISTRICT OF LOUISIANA

                                                       KRISTEN LUNDIN CRAIG
ASSISTANT UNITED STATES ATTORNEY

# Criminal Cover Sheet — U.S. District Court

**Place of Offense:**

City: Baton Rouge

County/Parish: East Baton Rouge

*Investigating Agency: Labor

*Agent: Dyisha Morgan-Neal

**Matter to be sealed:** ☐ Yes  ☑ No

Related Case Information:

Superseding _____ Docket Number _____
Same Defendant _____ New Defendant  X
Magistrate Case Number: _____
Search Warrant Case No.: _____
R 20/ R 40 from District of: _____
**Any Other Related Cases:** _____

**Defendant Information:**

Defendant Name: RINITA LEE MACK

Alias: _____

Address: _____

Birthdate: _____ SS #: _____ Sex: ___ Race: _____ Nationality: _____

**U.S. Attorney Information:**

AUSA: Kristen Craig     Bar #: LBM 32565

Interpreter: ☐ Yes  ☑ No    List language and/or dialect: _____

**Location Status:**

Arrest Date _____
_____ Already in Federal Custody as of
_____ Already in State Custody
_____ On Pretrial Release

**U.S.C. Citations:**

Total # of Counts: 1

| Code | Description of Offense Charged | Count(s) | Petty/ Misdemeanor/ Felony |
|---|---|---|---|
| 18 U.S.C. § 1343 | Wire Fraud | 1 | F |
| | | | |
| | | | |
| | | | |

(May be continued on second sheet)

Date: 7/3/25   Signature of AUSA: [signature]